**FOR PUBLICATION**

```
         IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
              DIVISION OF ST. THOMAS AND ST. JOHN

CARIB WASTE TECHNOLOGIES,        )
INCORPORATED,                    )
                                 )
        Plaintiff,                )
                                 )
                                 )
            v.                   )    Civil No. 2004-98
                                 )
VIRGIN ISLANDS WATER AND POWER   )
AUTHORITY,                       )
                                 )
        Defendant,                )
_____)
```

**ATTORNEYS:**

**Treston Moore, Esq.**
St. Thomas, U.S.V.I.
    *For the plaintiff,*

**Samuel Hall, Esq.**
**Lorelei Farrington, Esq.**
St. Thomas, U.S.V.I.
    *For the defendant.*

<u>ORDER</u>

**GÓMEZ, C.J.**

Before the Court is the motion of the defendant, the Virgin Islands Water and Power Authority ("WAPA") to dismiss the complaint filed by Carib Waste Technologies, Incorporated ("Carib Waste") for lack of subject matter jurisdiction. For the reasons stated below, the Court will deny the motion.

# I. FACTS

Carib Waste is a corporation with its principal place of business in Puerto Rico. It disposes of solid waste and produces electricity in the process. WAPA is a public corporation created by statute. V.I. CODE ANN. tit. 30, §§ 103-05 (1990). Pursuant to its statutory obligations, WAPA distributes water and electricity in the U.S. Virgin Islands. *Id.* at § 105. While WAPA sets the rates for the use of water and electricity in the territory, such rates are subject to review and amendment by the Virgin Islands Public Services Commission (the "PSC"). *See id.* at §§ 1(a),(c), 23(a), 105(12).

In 2000, the government of the Virgin Islands conducted a competitive procurement process to help dispose of solid waste in the territory. Following that process, the government selected Caribe Waste, which propsed a project designed to recycle solid waste and convert it into electricity (the "Project"). The electricity would then be sold to WAPA.

Subsequently, Carib Waste and WAPA began negotiating the purchase of water, and of electricity produced by the Project. In May, 2001, Carib Waste presented WAPA with a draft agreement for the purchase of water and electricity. The draft contemplated that WAPA would buy water and electricity generated by Carib Waste for its avoided cost. The avoided cost is "the

*Carib Waste Technologies, Inc. v. V.I. Water and Power Auth.*
Civil No. 2004-98
Order
Page 3

cost to the electrical utility for the electric energy which, but for the purchase from such cogenerator or small power producer, the electrical utility would generate or purchase from another source." *Id.* at § 49(c).  Thereafter, WAPA presented Carib Waste with an estimate of its avoided cost of water and electricity.

In June, 2001, WAPA and Carib Waste again discussed the terms of the draft water and power purchase agreement.  They discussed an arrangement under which WAPA would purchase water from Carib Waste for $9.75 per 1,000 gallons, and it would buy electricity from Carib Waste at the avoided cost determined by an independent consulting firm.

Thereafter, WAPA notified Caribe Waste that it would not purchase water from Carib Waste at the price of $9.75 per 1,000 gallons.

At the end of July, 2001, Carib Waste presented WAPA with a revised draft agreement, which included the avoided cost data for the purchase of electricity as determined by the consulting firm. In that draft, Caribe Waste also agreed to a lower cost of water proposed by WAPA.

In August, 2001, WAPA informed Carib Waste that it would not accept the avoided cost figures calculated by the consulting firm.

*Carib Waste Technologies, Inc. v. V.I. Water and Power Auth.*
Civil No. 2004-98
Order
Page 4

In fall, 2001, WAPA advised Carib Waste that it would not purchase power from Carib Waste unless Carib Waste first received certification as a qualifying cogeneration facility ("Qualifying Facility")[1] from the Public Services Commission ("PSC"). Subsequently, Carib Waste petitioned for Qualifying Facility certification with the PSC, which conducted a formal hearing on the matter. WAPA opposed Carib Waste's petition.

On July 1, 2002, the PSC certified Carib Waste as a Qualifying Facility. *See* (Pub. Servs. Comm'n Order No. 13, ¶¶ 8(a)-(c).) WAPA appealed that decision to the Superior Court.[2] That appeal was subsequently consolidated with a declaratory

---

[1] Title 30, section 46 of the Virgin Islands Code ("Section 46") defines the term "cogeneration facility" as "a facility which produces: (1) electric energy, and (2) steam or forms of useful energy (such as heat) which are used for industrial, commercial, heating, or cooling purposes." 30 V.I.C. § 46(a) (1971). Section 46 also defines "qualifying cogeneration facility" to mean:

[A] cogeneration facility which:

(1) the [PSC] determines meets such requirements (including requirements relative to minimum size, fuel use, and fuel efficiency) as the Commission may, by rule, prescribe; and

(2) is owned by a person not primarily engaged in the generation or sale of electric power (other than electric power solely from cogeneration facilities or small power production facilities).

*Id.* at § 46(g).

[2] *See* Super. Ct. Civ. No. 2003-363.

*Carib Waste Technologies, Inc. v. V.I. Water and Power Auth.*
Civil No. 2004-98
Order
Page 5

judgment action filed by WAPA in the Superior Court,[3] which challenged the authority of the PSC to assert control over WAPA's operations and management.

In September, 2003, WAPA notified Carib Waste that it would institute another competitive bidding process and issue a request for proposals (an "RFP") for solid waste disposal services, as well as for an analysis of its avoided cost figures. By July, 2004, WAPA had not issued the RFP. Carib Waste thereafter commenced this action against WAPA.

The ten-count complaint alleges that WAPA breached contracts it had with Carib Waste to negotiate a power purchase contract, to be bound by the consultant's determination of the avoided cost, and to resume negotiation on the power purchase contract after Carib Waste became a qualifying facility. Carib Waste also claims that WAPA: breached its duty of good faith and fair dealing; employed unfair methods of competition; intentionally and negligently violated statutory provisions; committed fraud in its negotiations, and tortiously interfered with Carib Waste's prospective economic advantage. Carib Waste seeks damages in the amount of its expenditures to date in the negotiations and in procuring the independent consultant. Carib Waste also requests

---

[3] *See* Super. Ct. Civ. No. 2003-564.

*Carib Waste Technologies, Inc. v. V.I. Water and Power Auth.*
Civil No. 2004-98
Order
Page 6

a declaratory judgment that WAPA deliberately failed to negotiate with Carib Waste in good faith.

Argument on the instant motion to dismiss was heard on March 24, 2006. During the hearing, Carib Waste stated that it was seeking a judicial order compelling WAPA to sign a power purchase agreement with Carib Waste.

On January 8, 2007, the Superior Court issued a memorandum opinion and order granting both WAPA's petition for appeal of the PCS's designation of Carib Waste as a Qualifying Facility and WAPA's request for declaratory relief. The January 8, 2007, order stated that "the Public Service Commission does not have authority to [p]rohibit the Virgin Islands Water and Power Authority from exercising any of the powers granted to it by title 30[, section 105 of the Virgin Islands Code] . . . ." (Order 2, Super. Ct. Civ. No. 2003-363 & No. 2003-564, Jan. 8, 2007.) The court also declared that "administrative decisions and actions of the Virgin Islands Water and Power Authority and its governing board relative to its electric generation needs, the methods chosen to address those needs, and the designs for such generation, are not subject to review and approval by the Public Service Commission . . . ." (*Id.*)

On March 1, 2007, the PSC appealed the Superior Court's order to the Supreme Court of the United States Virgin Islands

*Carib Waste Technologies, Inc. v. V.I. Water and Power Auth.*
Civil No. 2004-98
Order
Page 7

(the "Supreme Court").[4] On June 9, 2008, the Supreme Court entered an order affirming the January 8, 2007, decision of the Superior Court.

## II. ANALYSIS

WAPA argues that this case should be dismissed for lack of subject matter jurisdiction.

In considering a factual challenge to subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), the plaintiff bears the burden of proving that jurisdiction is appropriate.[5] *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) ("[U]nder Rule 12(b)(1), the plaintiff must bear the burden of persuasion."). Rather than presuming the truthfulness of the allegations, courts must independently assess the merits of the jurisdictional claims. *See id*. Additionally, "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (explaining that factual challenges to subject matter jurisdiction attack the truth of the

---

[4] *See* S.Ct. Civ. No. 2007-27.

[5] The parties have confused the proper standard for WAPA's motion with the standard for a motion to dismiss for failure to state a claim.

*Carib Waste Technologies, Inc. v. V.I. Water and Power Auth.*
Civil No. 2004-98
Order
Page 8

facts alleged in the complaint, whereas facial challenges contest the sufficiency of the pleadings).

The sole reason that WAPA asserts for lack of jurisdiction is that Carib Waste failed to exhaust the administrative remedies afforded by the PSC before filing suit in this Court. WAPA claims that before Carib Waste could properly file suit in this Court, Carib Waste had to obtain an interconnection order from the PSC. The interconnection order would require WAPA to purchase power from Carib Waste.[6]

"It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) (*citing McKart v. United States*, 395 U.S. 185, 193 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969)). There are three exceptions to the exhaustion requirement: (1) where a challenge implicates constitutional rights; (2) where the

---

[6] Title 30, section 47 of the Virgin Islands Code ("Section 47") authorizes the PSC to issue an interconnection order upon the application of a Qualifying Facility. 30 V.I.C. § 47(a) (1984). An interconnection order can require "the physical connection of any cogeneration facility, small power production facility, or the transmission facilities of any electric utility, with the facilities of" the applicant for the interconnection order. *Id.* at § 47(a)(1)-(2). Section 47 further provides that the PSC may direct the "sale or exchange of electric energy or other coordination, as may be necessary to carry out the purposes of any" interconnection order. *Id.* at § 47(a)(3).

*Carib Waste Technologies, Inc. v. V.I. Water and Power Auth.*
Civil No. 2004-98
Order
Page 9

administrative procedures would not prevent an irreparable injury; and (3) where resort to administrative procedures would be futile. *See Facchiano v. United States Dep't of Labor*, 859 F.2d 1163, 1168-1169 (3d Cir. 1988). Exhaustion is considered futile where an administrative agency is without the authority to address the matter before the agency. *See Lester H. v. Gilhool,* 916 F.2d 865, 869-870 (3d Cir. 1990).

    The PSC has the authority to investigate allegations against WAPA for charging unreasonable, unjust, or discriminatory rates. *See* 30 V.I.C. § 21 (1965). Furthermore, in its recent affirmation of the Superior Court's January 8, 2007, order, the Virgin Islands Supreme Court clearly held that "WAPA is . . . subject to PSC's review for rate-setting purposes only." (Mem. Op. 13, *V.I. Public Servs. Comm'n v. V.I. Water and Power Auth.,* S.Ct. Civ. No. 2007-27, June 9, 2008.)

    Carib Waste has brought a ten-count complaint against WAPA seeking damages for breach of contract, as well as reimbursement for expenses incurred in attempting to reach an agreement with WAPA. For instance, Count One states that "WAPA agreed to be bound by [the consultant's] avoided cost report. WAPA breached that contract." (Compl. at ¶ 42a, July 26, 2004.)

    None of the parties have offered, nor is the Court aware of, any statutory or regulatory authority empowering the PSC to

*Carib Waste Technologies, Inc. v. V.I. Water and Power Auth.*
Civil No. 2004-98
Order
Page 10

settle contract or other common law claims that are not rate disputes or disputes between a current power provider and WAPA. *See* 30 V.I.C. §§ 20-23 (authorizing the PSC to investigate, review, and fix rates set by WAPA). If Carib Waste and WAPA had entered into a contract and then were unable to come to an agreement about the proper rate for power purchasing, then Carib Waste would have administrative remedies. Absent some authority for the proposition that the PSC may determine breach of contract claims against WAPA, it would be fruitless to seek relief from that agency. *See Gibson v. Berryhill*, 411 U.S. 564, 575, n. 14 93 S.Ct. 1689, 36 L.Ed.2d 488 (1974) ("State administrative remedies have been deemed inadequate by federal courts and hence not subject to the exhaustion requirement . . . because of some doubt as to whether the agency was empowered to grant effective relief . . . ."). Accordingly, the failure of Carib Waste to file a complaint with the PSC is insufficient grounds for dismissal of this action.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the motion to dismiss is **DENIED**.

S\_____
**CURTIS V. GÓMEZ**
**Chief Judge**